IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


LANDON EARL THOMAS                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 5:24CV5-DCB-ASH

PIKE COUNTY, MISSISSIPPI, ET AL                      DEFENDANTS



**TRANSCRIPT OF OMNIBUS HEARING**



BEFORE THE HONORABLE ANDREW S. HARRIS
UNITED STATES MAGISTRATE JUDGE



OCTOBER 29, 2025
JACKSON, MISSISSIPPI









REPORTED BY:  TERI B. NORTON, RMR, FCRR, RDR
            Mississippi CSR #1906
_____

501 E. COURT STREET, SUITE 2.500
JACKSON, MISSISSIPPI  39201
(601)608-4186



EXHIBIT
**B**

APPEARANCES:

FOR THE PLAINTIFF:
     LANDON EARL THOMAS, PRO SE
     108168
     SOUTH MISSISSIPPI  CORRECTIONAL FACILITY
     POST OFFICE BOX 1419
     LEAKESVILLE, MISSISSIPPI  39451

FOR THE DEFENDANTS, PIKE COUNTY, MS; SHERIFF JAMES BRUMFIELD;
CAPTAIN RICHARD BYNAM; VALERIE WELLS; BRIANA PERRYMAN, KIMBERLY
WALLACE:
     JESSICA S. MALONE, ESQUIRE
     JACKS GRIFFITH LUCIANO, P.A.
     POST OFFICE BOX 1209
     CLEVELAND, MISSISSIPPI  38732-1209

FOR THE DEFENDANT, HERBERT YOUNG:
     CHARLES E. COWAN, ESQUIRE
     WISE, CARTER, CHILD & CARRAWAY, PA
     401 EAST CAPITOL STREET, SUITE 600
     JACKSON, MISSISSIPPI  39201

1          **THE COURT:**  The Court calls the matter of Thomas

2     versus Pike County, et al.  This is Civil Action No.

3     5:24cv5-DCB-ASH.

4          Good morning.  Are you Mr. Thomas?

5          **PLAINTIFF THOMAS:**  Yes, sir.

6          **THE COURT:**  Mr. Thomas, is the green light on on your

7     microphone?

8          **PLAINTIFF THOMAS:**  Yes, sir.

9          **THE COURT:**  All right.  If you don't mind, ma'am, can

10    you scoot that towards him just a little closer so we can hear

11    him a little bit better?  Thank you very much.

12         All right.  Great.  And if I could please have

13    introductions on the record of defense counsel who are present

14    today.

15         **MS. MALONE:**  Yes, Your Honor.  Jessica Malone for

16    Defendants Pike County, Mississippi, Sheriff James Brumfield,

17    Captain Richard Bynam, Valerie Wells, Briana Perryman, and

18    Kimberly Wallace.

19         **THE COURT:**  All right.  Thank you.

20         **MR. COWAN:**  Charles Cowan for Defendant Herbert

21    Young.

22         **THE COURT:**  All right.  Great.  Thank you.

23         Mr. Thomas, I've asked you to join us here today to talk

24    about your lawsuit in this matter, 5:24cv5.  We are here for

25    what's called a *Spears* or an omnibus hearing.  I'm aware you

1    had one of these with my colleague, Judge Isaac, over the

2    summer.  So you are probably familiar with the process a little

3    bit.

4         What we are going to do today is talk about your lawsuit,

5    get a better understanding of what you are claiming in your

6    lawsuit.  We are going to go over whether you want to consent

7    to me or not, and we will talk about some other preliminary

8    matters today.  Just as a reminder, today is not your trial.

9    Today is just to hear what you are alleging.  So we just want

10   to better understand what your claims are, and that's the

11   process we are going to go through today.

12        As you heard, defense counsel are present today.  I will

13   give them an opportunity, if they have any questions, to ask

14   you some later today after I've asked you some questions.

15        Let's talk first, just briefly.  I did read your

16   transcript from Judge Isaac's hearing, so I'm aware of what she

17   went over with you.  I'm going to kind of cover some of that

18   again but just briefly so I don't waste any of your time today.

19   As you understand, because you are proceeding IFP, and because

20   you are a prisoner, you are subject to the Prison Litigation

21   Reform Act.  That requires me to screen your case.  And so what

22   I'm doing when I'm screening your case is I'm trying to

23   determine whether or not you have stated a claim, whether or

24   not you have facts, whether there is an arguable basis in law

25   and in fact for your claims.  So that is the process we are

1   going through at this point.

2        While your case is in the screening phase, discovery won't

3   begin.  Once I have screened it, if it goes forward, I will let

4   you know, and that's when discovery will commence in your case.

5        What I'm going to do today is hear from you.  I've read

6   your complaint you have filed.  I have read the attachments you

7   filed in the record.  But what I want to do today is hear from

8   you, and what you tell me will be a supplementation of sorts to

9   your complaint.  So the things you tell me today will become

10  part of your claims today.  It will give you a chance to

11  clarify some things, to answer some questions, and to let us

12  get a better understanding of what you are claiming.

13       Because I'm going to take into consideration what you tell

14  me, I do need to place you under oath.  I ask that you please

15  raise your right hand and take the oath.

16       **(OATH ADMINISTERED.)**

17            **THE COURT:**  A little housekeeping matter, just to

18  keep in mind.  We have Ms. Teri here, who is our court

19  reporter, and she is taking down what you say, as you say it,

20  typing it all down.  It helps her to have the mics on because

21  she can hear better what everyone is saying in the courtroom.

22       In natural conversation, you usually know what I'm going

23  to say or what someone is going to ask you before they finish,

24  and you can jump in and start to answer.  In a courtroom

25  setting, that is very difficult for the court reporter because

1    she's not capable of writing down what two people say

2    simultaneously.  So I will ask, if you will today, Mr. Thomas,

3    and the same goes for the defense counsel, let's all make an

4    effort to make sure we let whoever is speaking finish before

5    anyone else starts to answer, and that way Ms. Teri can get

6    down a clear record so that later on, when we go to read this,

7    we know the question that was asked in addition to the answer

8    that was given.

9        Let's talk briefly about consent, Mr. Thomas.  You have

10   the option to choose whether or not to have the district judge

11   hear your case or whether to have the magistrate judge hear

12   your case.  In our court, you get two judges at the outset.

13   You get a district judge and a magistrate judge.  Your district

14   judge assigned to this case is Senior Judge David C. Bramlette.

15   I am your magistrate judge who's assigned to your case.

16   Currently what will happen in the case is I will do reports and

17   recommendations to the district judge, and he will decide those

18   at a later date.  If you want to consent, we can change that

19   process where I would be your only judge assigned to your case.

20       I will tell you, if you consent to magistrate judge

21   jurisdiction, the same procedural rules apply.  I'm going to

22   apply the same rules Judge Bramlette would apply.  The same

23   rules of evidence apply.  He and I would both apply the exact

24   same rules.  You would still have the same right to appeal if

25   you are dissatisfied with the outcome at the district court

1    level.  Everything is going to be the same right down the line,

2    with the exception that sometimes the magistrate judge can get

3    to your case sooner because the magistrate judge does not have

4    the same obligations to try felony criminal trials that the

5    district judge has.  But in either case, it is not a massive

6    difference in the amount of time.

7         As I mentioned, I am your magistrate judge.  I can assure

8    you it makes no difference to Judge Bramlette whether he hears

9    your case, and it makes no difference to me.  If you consent to

10   me, it's not going to make Judge Bramlette mad.  If you don't

11   consent to me, it's not going to make me mad.  And it certainly

12   is not going to adversely affect your case one way or the

13   other.  Do you have any questions about the consent process?

14             **PLAINTIFF THOMAS:**  No, sir.

15             **THE COURT:**  All right.  What do you want to do?  Do

16   you want to have Judge Bramlette hear your case or do you want

17   to consent to me hearing the case?

18             **PLAINTIFF THOMAS:**  Consent to you.

19             **THE COURT:**  Okay.  Defense counsel, I also need to

20   ascertain your clients' positions as to these issues.  Ms.

21   Malone, correct?

22             **MS. MALONE:**  Yes, sir.

23             **THE COURT:**  What are your clients' positions as to

24   consent?

25             **MS. MALONE:**  My clients consent to the magistrate.

1     **THE COURT:** And Mr. Cowan, what says your client?

2     **MR. COWAN:** Herbert Young consents, Your Honor.

3     **THE COURT:** All right.  Now, to memorialize the

4 consent, Mr. Thomas, we do need you to execute the form that

5 would reflect that you have consented.  I have it somewhere in

6 my stack here.

7    If you will, please take that to Mr. Thomas.  Mr. Thomas,

8 I put an X where you need to print your name and where you need

9 to sign it.  Obviously, please read the form before you do so,

10 but this will effectuate your consent.

11    (Plaintiff signs consent form.)

12    (Defense counsels sign consent form.)

13     **THE COURT:** Everything appears to be in order.  I

14 have received an executed consent form from Mr. Thomas, as well

15 as Ms. Malone and Mr. Cowan on behalf of their respective

16 clients.

17    All right.  Before we get started, I do want to discuss

18 briefly the motion to amend that you filed, Mr. Thomas.  You

19 have filed on October 23rd a motion to amend/correct your

20 complaint where essentially you indicate you no longer wish to

21 pursue a claim against Ms. Valerie Wells.  Is that correct?

22     **PLAINTIFF THOMAS:** Yes, sir.

23     **THE COURT:** Okay.  And as I understand it, you are

24 seeking to dismiss her from this lawsuit?

25     **PLAINTIFF THOMAS:** Yes, sir.

1      **THE COURT:**  All right.  Ms. Malone, I believe that is

2    your client.  No response has been filed.  Does your client

3    have a position today about whether or not it opposes dismissal

4    of Ms. Wells without prejudice?

5      **MS. MALONE:**  Your Honor, Defendant Wells agrees.

6      **THE COURT:**  All right.  Thank you very much.  The

7    Court will take that matter up in due course, but I appreciate

8    the clarifications from both sides as to that issue.  We can

9    now avoid having to talk about one of the people today.

10      So let's shift gears into the substance of your lawsuit,

11    Mr. Thomas.  So I've read your complaint.  I've read everything

12    you filed in the docket.  I have reviewed what you are

13    alleging, and I'm familiar there's been several other lawsuits

14    you have filed in the past, and I've reviewed those as well

15    trying to get up to speed in some of your claims relating to

16    the mail issues.

17      So, generally speaking, let me just cover the waterfront

18    here.  You have sued Pike County, Sheriff Brumfield, Captain

19    Bynam, Herbert Young, we have taken care of Ms. Wells, Briana

20    Perryman, and Kimberly Wallace.  And the claims kind of go in a

21    couple of big buckets:  An assault and related issues, general

22    jail conditions, and some issues with your mail.

23      So what I'm going to do is, I want to give you a chance to

24    tell me in your own words, walk me through your claims and walk

25    me through what you are claiming each defendant did.  As I

1    understand, some of these defendants may only relate to some

2    parts of your claims and not every single part.  So what I want

3    to try to understand is what are you claiming happened, and

4    what are you claiming each defendant did or did not do that

5    resulted in your claim?  And we will come back and talk a

6    little bit about how you were hurt and what you are seeking in

7    the lawsuit.

8         I want to know what rights you claim have been violated.

9    I understand you are not a lawyer.  I understand you are

10   proceeding pro se.  So you don't have to tell me what

11   particular part of the Constitution, but to the best of your

12   knowledge, if you can articulate why you are claiming what

13   happened to you is a violation of your rights and what rights

14   you think have been violated, that will help me and help

15   counsel better understand what you are alleging in this

16   lawsuit.

17        And again, you don't have to go into extreme detail at

18   this point.  I will have some follow-up questions for you, and

19   the defense counsel may have some as well.  Why don't you just

20   start -- maybe start with me as -- where to start your

21   narrative of what happened and what you are claiming.  I do

22   understand you are no longer incarcerated at the Pike County

23   jail.  So why don't you start with when you got there, and then

24   talk me through what occurred that is your claim in this

25   lawsuit.

1          **PLAINTIFF THOMAS:**  Well, when I first got there, the
2   conditions of confinement -- I guess I will start with that --
3   the poor, inhumane ways they had us in there, like, cells with
4   no lights, exposed wires, mold everywhere, little or no
5   hygiene, you know, sleeping on floors, no clothes, poor trays,
6   poor food, little or no medical care, no law library, due
7   process or whatever law library.  It was just poor living
8   conditions.

9          **THE COURT:**  Okay.  You are not there anymore, as I
10  understand it.  When did you leave?

11         **PLAINTIFF THOMAS:**  October the 4th -- no,
12  October 7th.

13         **THE COURT:**  Of this year or last year?

14         **PLAINTIFF THOMAS:**  Last year.

15         **THE COURT:**  So October 7th of 2024?

16         **PLAINTIFF THOMAS:**  Yes, sir.

17         **THE COURT:**  All right.  How have the conditions of
18  confinement during your time at Pike County, how have you been
19  injured by those?

20         **PLAINTIFF THOMAS:**  I don't know how I've been
21  injured.  You know, it's something, like breathing in all that
22  mold, that is long-term, long-term effects you can see later on
23  from being exposed to all that mold and stuff.  You know, and
24  all that sleeping on floors, it was hard, bad for my back and
25  stuff, you know.  It was just poor.  It was just bad.

1    **THE COURT:**  Okay.  The issues with sleeping on the

2    floors, now that you are no longer at Pike County, are you

3    better?

4    **PLAINTIFF THOMAS:**  Yes.

5    **THE COURT:**  Okay.  As to the mold issues, have you

6    seen a physician about those issues?

7    **PLAINTIFF THOMAS:**  No, sir.

8    **THE COURT:**  Okay.  To your knowledge, has anyone told

9    you, anyone with a medical degree or medical training told you

10   that you will have future medical problems?

11   **PLAINTIFF THOMAS:**  No, sir, I've not talked to

12   anyone.

13   **THE COURT:**  Okay.  To the best of your knowledge, why

14   do you think you will have future medical problems from the

15   mold?

16   **PLAINTIFF THOMAS:**  Because mold is harmful.  You

17   know, you can't breathe in mold, like we've been sitting there

18   just breathing it in.  We don't go outside at all.  We just sit

19   there 24/7 just breathing in mold.

20   **THE COURT:**  Okay.  So let's shift gears.  Anything

21   else about the conditions you want to mention?

22   **PLAINTIFF THOMAS:**  The poor air quality, the vents.

23   They didn't have no heat during the winter and stuff.

24   **THE COURT:**  Okay.  All right.  Let's shift gears and

25   talk about the part of your claim that relates to your assault.

1    Let me stop you for a second before I do that.  Let me stop

2    myself.  On your conditions claims, of the six defendants

3    you've named in the lawsuit, which defendants are you suing in

4    connection with the conditions of your confinement?

5              **PLAINTIFF THOMAS:**  James Brumfield, Captain Bynam,

6    and Herbert Young.

7              **THE COURT:**  Okay.  What do you contend that James

8    Brumfield did or did not do?

9              **PLAINTIFF THOMAS:**  It's his jail.  He is supposed to

10   be -- he is responsible for the maintenance and the upkeep of

11   it.  You know, it's his jail.  And Captain Bynam -- he's

12   running it.  He's away all the time and stuff, but it's his

13   jail.  And Captain Bynam, he is the man in charge of the jail.

14   He sees what goes on daily and stuff.  He's the man.

15       And Herbert Young, he helps run the jail too.  So if

16   anybody could do anything, it would be one of those three, and

17   nobody did anything.

18             **THE COURT:**  Did you make any requests to anyone at

19   Pike County about the conditions of confinement?

20             **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir, we made

21   petitions and everything.

22             **THE COURT:**  Okay.  How did you make those requests?

23             **PLAINTIFF THOMAS:**  Writing it down, writing them on

24   paper, getting everybody to sign all the papers and stuff.

25             **THE COURT:**  Who did you deliver them to?

1          **PLAINTIFF THOMAS:**  To the guards, Briana Perryman and

2     Kimberly Wallace.

3          **THE COURT:**  Okay.  What was the response you

4     received?

5          **PLAINTIFF THOMAS:**  No response.  Nothing.

6          **THE COURT:**  How many times did you submit a grievance

7     or a complaint?

8          **PLAINTIFF THOMAS:**  In Pike County?

9          **THE COURT:**  Yes, sir.

10          **PLAINTIFF THOMAS:**  As far as for that or just in

11     general?

12          **THE COURT:**  Related to the conditions.

13          **PLAINTIFF THOMAS:**  Probably like four or five times,

14     four or five.

15          **THE COURT:**  Did you ever speak to James Brumfield

16     about the conditions?

17          **PLAINTIFF THOMAS:**  He doesn't come to the jail.

18          **THE COURT:**  Okay.  Did you ever speak to Captain

19     Bynam about the conditions?

20          **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir.

21          **THE COURT:**  Okay.  What did Captain Bynam say about

22     the conditions?

23          **PLAINTIFF THOMAS:**  He just nods -- he just nods me

24     off, just dismisses me.

25          **THE COURT:**  And then Herbert Young, did you ever

1    speak to him about the conditions?

2              **PLAINTIFF THOMAS:**  Herbert, yes, sir, but he doesn't

3    like me.

4              **THE COURT:**  Did he treat you the same as Captain

5    Bynam?

6              **PLAINTIFF THOMAS:**  Dismissed me, yes.

7              **THE COURT:**  Okay.  All right.

8        So let's talk about your assault claim.  Explain to me, as

9    I read your complaint, on October 2nd, 2022, an assault

10   incident occurred.  Talk to me about what happened.

11             **PLAINTIFF THOMAS:**  So I couldn't understand if it was

12   October 2nd -- I couldn't remember if it was October 2nd or

13   October 11th.  I know it was like October -- it was early

14   October.

15       All right.  I was on my way to therapy for my wrist.  I

16   had broke my wrist, and I was on my way to therapy.  I was

17   sitting in the sallyport waiting for Officer Magee and Boyd to

18   go get the van and come back around and pull up and pick me up.

19   So I'm sitting there and I hear a van.

20             **THE COURT:**  You hear a what?

21             **PLAINTIFF THOMAS:**  I hear a van pull up in the

22   garage.  So I'm thinking it is them, so I get up and I look out

23   the window, and I see Officer Herbert.  He was the transport

24   officer then.  I see him and I'm, like, oh, man, I'm going to

25   sit back down.  I sat back down.  So he comes in and he looks

 1    at me.  He said, What's up now?  What's up now, old BA -- it

 2    was bad words.

 3              **THE COURT:**  Just say what he said.  I know we're in a

 4    courtroom, but I like to understand.

 5              **PLAINTIFF THOMAS:**  "Old bitch-ass nigga.  What's up

 6    now, old bitch-ass nigga."  I'm like, "Man, ain't nothing up.

 7    Same thing with you."  He was like, "You ain't going to do

 8    nothing now."  I said, "No, I'm not going to do nothing.  Same

 9    thing you going to do."  I had handcuffs on.  I'm shackled.  I

10    had handcuffs on.  Except this hand right here is free because

11    I had broke my wrist.  They couldn't put handcuffs on this

12    wrist.  So he was like -- so he says, "I bet you won't be

13    standing over there by that door when I come back."  He wanted

14    me to stand outside the door when he come back.  I said, "Okay,

15    whatever."  So he goes off.

16         Now, mind you, now, when he gets out of the van, he has on

17    plastic gloves, like white plastic gloves because they are

18    taking a crazy patient off.  So he goes up to the front and

19    gets some papers or whatever he gets, and he comes back with

20    some black tactical gloves on.  So it's already on his mind.

21    So I'm standing over there by the door, and on his way out the

22    door, on his way out the door, he jumps at me, like, iffs at

23    me, and I just laugh at him.  I'm like, "Man, you are a weak

24    ass dude."  You know what I'm saying?  "You are so weak."  You

25    know what I'm saying?  And he poked me in my forehead.  He

1   leans back in the door and pokes me in my forehead.  And he

2   said, "I told you you wasn't going to do anything.  You little

3   bitch-ass nigger."  And I poke him back in the forehead.  So

4   then he runs at me.  He comes back in the door and runs at me,

5   and I side-stepped him.  When I side-stepped him, I hit him

6   three times because he is running towards me trying to grab me.

7   He grabs me.  He pushes -- now, mind you, I have shackles on.

8   My arm is around -- I got a chain around my waist and shackles

9   on my feet.  He grabs my shirt like this and he runs --

10          **THE COURT:**  He grabs you by the shirt collar?

11          **PLAINTIFF THOMAS:**  Yes, like this.  He grabs me with

12   two hands.  He grabs me and he runs with me across the room to

13   the little sallyport.  I hit the wall, so, boom, I'm on the

14   floor.  He is sitting on top of me.  There is a bench right

15   next to the little corner that we are in.  So he starts banging

16   my head on the bench, boom, boom, boom.  And I hit him with my

17   hand that was loose and he stops.

18       The other officer, the one that was outside, he comes up

19   and he runs and he grabs my hand.

20          **THE COURT:**  Who was that?

21          **PLAINTIFF THOMAS:**  Officer Brooks.  He comes and

22   grabs my wrist.  He comes and grabs it.  Another officer comes

23   from the front and he grabs my feet.

24          **THE COURT:**  Who was the second officer?

25          **PLAINTIFF THOMAS:**  Officer Paul.  I know his first

1  name is Paul.  The other officer comes and grabs my feet.  Now,

2  Herbert is sitting on top of me digging in my eyeball.  He's

3  trying to pull my eye out.  He is sitting there pulling on my

4  eye while the other two officers, one is holding my hand and

5  the other one is holding my legs, and he's trying to pull my

6  eye out.  So by then, everybody comes and breaks it all up.  So

7  when they break it all up, I see him over there in the corner.

8  Nobody is paying attention to him.  I see him taking the gloves

9  off, taking the black gloves off and putting on the white

10  gloves while everybody is over there trying to hold me down and

11  stuff.

12       It is all on video.  There is a video of the incident

13  because another officer told me that she seen the video, and

14  she seen when he iff'd at me, and I put her down for a witness.

15            **THE COURT:**  Who is that person?

16            **PLAINTIFF THOMAS:**  Nisha Magee, the transport officer

17  that was taking me.

18            **THE COURT:**  You mentioned the gloves, that he had on

19  I guess white plastic gloves, and he put on black tactical

20  gloves.

21            **PLAINTIFF THOMAS:**  Yes, sir.  He took them off too.

22            **THE COURT:**  What is the significance to you of him

23  putting on black tactical gloves?

24            **PLAINTIFF THOMAS:**  He had something on his mind.

25  That is malicious intent right there.  That is malicious

1    intent.  You have on plastic gloves, and you go around the

2    corner.  You already told me to stand by the door.  You go

3    around the corner and you come back with the black gloves on.

4    These gloves is like beat-somebody-up gloves.

5            **THE COURT:**  I'm not familiar with the gloves, so I

6    don't understand --

7            **PLAINTIFF THOMAS:**  You can see the video.  You can

8    watch the video.

9            **THE COURT:**  Okay.  All right.  So after they break up

10   this altercation --

11           **PLAINTIFF THOMAS:**  Yes, sir.

12           **THE COURT:**  -- what happens next?

13           **PLAINTIFF THOMAS:**  They don't take me to therapy.

14   They keep me out of my therapy and they take me right back to

15   the cell.  They take me to a solitary cell because I had my

16   wrist broke and I couldn't be in the back with everybody else.

17           **THE COURT:**  You have to slow down just a little bit.

18           **PLAINTIFF THOMAS:**  I'm sorry.  I'm sorry.

19           **THE COURT:**  So they didn't take you to your therapy

20   for your wrist.  They brought you back to your cell, you said?

21           **PLAINTIFF THOMAS:**  Yes, sir.  And they let me stay in

22   the cell.  They didn't give me no nothing.  I was bleeding

23   because he dug in my eye.  It was bleeding.  They just put me

24   back in the cell.  But the next day, the next morning, all the

25   officers come to the cell to see me and look at my eye.  They

 1    said my eye was dilated, so they got to take me to the

 2    hospital, to the Frye Clinic.

 3                **THE COURT:**  To the what clinic?

 4                **PLAINTIFF THOMAS:**  Frye Clinic.

 5                **THE COURT:**  Is that the name of a clinic?

 6                **PLAINTIFF THOMAS:**  Yes, sir.

 7                **THE COURT:**  Okay.  After the altercation, did you

 8    request medical attention?

 9                **PLAINTIFF THOMAS:**  Yes, sir.  My eye was bleeding.

10    My eye was bleeding and I had to use my broke hand, my broke

11    wrist.

12                **THE COURT:**  Who did you request medical attention

13    from?

14                **PLAINTIFF THOMAS:**  Anybody that would listen to me,

15    all the officers.  They were all out there.

16                **THE COURT:**  Who specifically do you recall asking for

17    medical attention from?

18                **PLAINTIFF THOMAS:**  Briana Perryman, and -- not Briana

19    Perryman, but Kimberly Wallace, Ms. Valerie -- Ms. Valerie,

20    because she's the nurse.

21                **THE COURT:**  Okay.  And the next day is when you

22    received medical treatment?

23                **PLAINTIFF THOMAS:**  Yes, sir.

24                **THE COURT:**  Okay.  Were you able to go to your

25    therapy for your wrist eventually?

1          **PLAINTIFF THOMAS:**  No, sir.  They kicked me out of

2    it.

3          **THE COURT:**  What do you mean they kicked you out of

4    it?

5          **PLAINTIFF THOMAS:**  They took me out of it.  I was

6    doctor-ordered to go to my therapy sessions and they took me

7    out of it.

8          **THE COURT:**  Did you -- after this altercation, did

9    you ever receive therapy for your wrist again?

10          **PLAINTIFF THOMAS:**  No, sir.

11          **THE COURT:**  Okay.  What was the therapy you were

12    going through?

13          **PLAINTIFF THOMAS:**  I had broke -- I fractured two

14    bones in my wrist, I broke one, and I dislocated one.  And when

15    I did that, I cut off ligaments in my hand.  I cannot move my

16    wrist no more.  I cannot bend it like this.  I cannot bend it.

17    This is as far as it goes.

18          **THE COURT:**  So you were, I guess, undergoing physical

19    therapy?

20          **PLAINTIFF THOMAS:**  Yes, sir.

21          **THE COURT:**  You said it was doctor-ordered?

22          **PLAINTIFF THOMAS:**  Yes, sir.

23          **THE COURT:**  What doctor ordered it?

24          **PLAINTIFF THOMAS:**  I don't know.  The doctor from

25    Merit Health, I think.

1          **THE COURT:**  Okay.  Was it in a cast at some point?

2          **PLAINTIFF THOMAS:**  Yes, sir.

3          **THE COURT:**  Was it the doctor who put the cast on it?

4          **PLAINTIFF THOMAS:**  Yes, sir, Merit Health.

5          **THE COURT:**  Who was your physical therapist you were

6     seeing?

7          **PLAINTIFF THOMAS:**  I seen her one time.  I seen her

8     one time.  I know it's in Magnolia.  It's a place in Magnolia.

9          **THE COURT:**  How many times were you ordered to go to

10    physical therapy by the doctor?

11         **PLAINTIFF THOMAS:**  I don't know, but I never went.  I

12    went one time and that was it.

13         **THE COURT:**  Okay.  Do you know if the doctor ordered

14    you to go multiple times or a certain number?

15         **PLAINTIFF THOMAS:**  I know it was going to be a long

16    process because I had no movement.  I had no flexibility in my

17    wrist whatsoever, and I still don't have it.  I could only

18    hold, like, 15 pounds of pressure.  I could only apply -- that

19    was the max.  I can only hold that.

20         **THE COURT:**  You mentioned that your eye was bleeding,

21    correct?

22         **PLAINTIFF THOMAS:**  Yes, sir.

23         **THE COURT:**  All right.  Tell me what injuries you

24    suffered from the altercation?

25         **PLAINTIFF THOMAS:**  My eye and my head, he banged --

1    when he was banging my head up against the bench, he bruised

2    me -- he bruised it.  But my eye, to this day, if I rub it, it

3    starts watering, and it is messed up.

4          **THE COURT:**  Can you still see?

5          **PLAINTIFF THOMAS:**  Yes, sir, I can see, but it's not

6    as good as it used to be.  I can tell the difference in it when

7    I close my eyes.

8          **THE COURT:**  How is your vision different?

9          **PLAINTIFF THOMAS:**  It's kind of blurry.

10         **THE COURT:**  And this is your right eye you're

11   referring to?

12         **PLAINTIFF THOMAS:**  Yes, sir.

13         **THE COURT:**  Okay.  So you had an eye -- a cut around

14   your eye --

15         **PLAINTIFF THOMAS:**  No, unh-unh, on the inside of my

16   eye.  He put his fingers inside my eye.

17         **THE COURT:**  Okay.

18         **PLAINTIFF THOMAS:**  He tried to pull my eye out.

19         **THE COURT:**  So you had a cut inside your eye that was

20   bleeding.  You said it waters now and your vision isn't as

21   good.

22         **PLAINTIFF THOMAS:**  Yes, sir.

23         **THE COURT:**  You had some bruising on your head?

24         **PLAINTIFF THOMAS:**  Yes, sir.

25         **THE COURT:**  Any other injuries?

1    **PLAINTIFF THOMAS:**  Everything else is like little

2    cuts and bruises or whatever.

3    **THE COURT:**  Okay.  Other than you mentioning that you

4    still have eye watering and vision that isn't as good in your

5    right eye, have you otherwise recovered from the altercation?

6    **PLAINTIFF THOMAS:**  My wrist is still messed up.  If I

7    would have had therapy on it, maybe it could have been better.

8    But we will never know because I didn't have therapy in the

9    right amount of time.

10    **THE COURT:**  Okay.  At your current facility, you are

11    at South Mississippi?

12    **PLAINTIFF THOMAS:**  Yes, sir.

13    **THE COURT:**  Have you requested any medical treatment

14    for your wrist?

15    **PLAINTIFF THOMAS:**  No, sir.  No, sir.  Because it's

16    really too late.  They can only do what they were supposed to

17    did when it was time.

18    **THE COURT:**  Um-hm.  Has anyone with medical training

19    told you that it's too late to do anything about your wrist at

20    this point?

21    **PLAINTIFF THOMAS:**  No, sir.  I haven't talked to

22    anybody.

23    **THE COURT:**  All right.  You mentioned that Captain

24    Bynam was involved, I guess, in the aftermath of this

25    altercation.  Explain to me his role as you are alleging it.

1          **PLAINTIFF THOMAS:**  Okay.  Well, his role is, he told

2   me and Herbert, we had came to the conclusion that he wasn't

3   going -- we were going to squash it, we would squash it, but

4   Captain Bynam tells him that in order for him to keep his job,

5   that he's got to press charges on me, and that if he doesn't

6   press charges, it's going to look bad on him.  So I'm thinking

7   that he has let it go.  And on October 11th or whatever, ten

8   days later, I guess it is ten days later -- I know it's ten

9   days exactly later from the time of the incident, they take me

10  to court.  They take me to court for assault on a police

11  officer.  They gave me a charge for assault on a police

12  officer.  There is a video, like I said, and they charged me

13  with this.  They bound me over to the grand jury.  They came in

14  there, they didn't let me talk at all, and they bound me over

15  to the grand jury.

16          **THE COURT:**  What's the status of those charges, to

17  your knowledge?

18          **PLAINTIFF THOMAS:**  Nothing, nothing.  Nothing has

19  come from them.

20          **THE COURT:**  Do you know whether they were dismissed

21  or whether they are still pending?

22          **PLAINTIFF THOMAS:**  It's been -- it was in '22, so

23  whatever they are -- you can tell me better.

24          **THE COURT:**  You don't know, I guess?

25          **PLAINTIFF THOMAS:**  No, sir.

1          **THE COURT:**  Okay.  So what you described that Captain

2     Bynam said that Officer Young needed to do, how do you have

3     knowledge of that?

4          **PLAINTIFF THOMAS:**  Through an officer.  Through

5     another officer.

6          **THE COURT:**  Which officer?

7          **PLAINTIFF THOMAS:**  Nisha Magee.

8          **THE COURT:**  Okay.  To your knowledge, how does

9     Ms. Magee -- or Officer Magee have knowledge of this?

10         **PLAINTIFF THOMAS:**  Because she's a transport officer,

11    and her and Herbert Young, they were buddies, or whatever.  And

12    she told me she was disappointed.  And I was, like, well, he

13    said he was going to do this.  And she said, Well, I'm sorry

14    for you because he can't do that.  He probably was going to do

15    it, but he can't do it now that Captain Bynam told him to do

16    it.

17         **THE COURT:**  Okay.  I guess you described that you and

18    Officer Young had sort of said y'all were going to just let it

19    go?

20         **PLAINTIFF THOMAS:**  Yes, sir.

21         **THE COURT:**  It sounds like y'all kind of had a

22    gentleman agreement --

23         **PLAINTIFF THOMAS:**  Yes, sir.

24         **THE COURT:**  -- as to the altercation.  Is that

25    something you and Officer Young talked about?

1      **PLAINTIFF THOMAS:**  Yes, sir.

2      **THE COURT:**  Okay.  And what had y'all discussed or

3  where did y'all discuss it maybe is my first question?

4      **PLAINTIFF THOMAS:**  In the infirmary.  I was in the

5  infirmary, and he came and talked to us.

6      **THE COURT:**  So the next day --

7      **PLAINTIFF THOMAS:**  No, it was not the next day.  It

8  was like a couple of days later because he was still mad.

9      **THE COURT:**  Can you recall what was said between the

10  two of you?

11      **PLAINTIFF THOMAS:**  Yes, we men.  He said, "Man, I

12  just want my job."  And I was like, "I can understand.  I just

13  want to go home."  So we was, like, we going to let it go.  But

14  ten days after, like I said, a couple of days later, he gets up

15  on the stand and he gets up there and he lies on me.  He gave

16  me a charge, you know.

17      **THE COURT:**  Were you appointed counsel for that

18  charge of assaulting a police officer?

19      **PLAINTIFF THOMAS:**  Court-appointed lawyer, a

20  court-appointed lawyer.  I don't even know who he was.

21      **THE COURT:**  To your knowledge, you did receive one,

22  but you don't know the person's name?

23      **PLAINTIFF THOMAS:**  Really, I don't even think I

24  received one.  I really don't.  I really don't.  You can look

25  at -- you can probably look at the records and see who it was

1    or whatever, but I don't think I received one.

2         **THE COURT:**  All right.  It sounds like you had a

3    probably cause hearing and you were bound over to the grand

4    jury?

5         **PLAINTIFF THOMAS:**  Yes, sir.

6         **THE COURT:**  Have you had any further hearings since

7    then?

8         **PLAINTIFF THOMAS:**  No, sir.

9         **THE COURT:**  Okay.  Anything further about the assault

10   claim you wish to add?

11        **PLAINTIFF THOMAS:**  Briana Perryman helped him write

12   it up.

13        **THE COURT:**  Okay.  What did she do wrong in your

14   claim?

15        **PLAINTIFF THOMAS:**  She wasn't -- she wasn't at work

16   that day, and she comes back and she helps him lie, and she

17   knows it.  They all know he is lying because they all seen the

18   video.

19        **THE COURT:**  Okay.  Have you seen the video?

20        **PLAINTIFF THOMAS:**  No, sir, but I know what's on -- I

21   know because I was there, you know.

22        **THE COURT:**  Um-hm.

23        **PLAINTIFF THOMAS:**  You can't dispute what was there.

24   I was there.  I know what's on the video.

25        **THE COURT:**  When the altercation began with the -- I

1    will just summarize it -- with the taunting and the head pokes,

2    was anyone else present for that besides you and Officer Young?

3              **PLAINTIFF THOMAS:**  No, sir, but I think he has a

4    witness though, Appaloosa, or whatever.  But if you have a

5    witness and you got me for assaulting a police officer in Pike

6    County, you're not going to play with me.  You're not going to

7    let that slide.  You are going to sentence me.  You are going

8    to give me the max or whatever you do.  Obviously nothing came

9    from that because it wasn't how they said it went.

10             **THE COURT:**  Okay.  The other claim you have, from my

11   read of your complaint, is a claim relating to prison mail.

12             **PLAINTIFF THOMAS:**  Yes, sir.

13             **THE COURT:**  Talk to me about that claim.

14             **PLAINTIFF THOMAS:**  Well, in '22, I was trying to file

15   lawsuits.  I was trying to file the conditions of confinement

16   because it was way back worse back then.  They withheld my

17   mail, and they wouldn't give it to me.  When they see lawsuits,

18   when they see, like, where it is going to, they wouldn't send

19   it out.  Or they wouldn't fill the paperwork out to proceed.

20   They wouldn't fill it out for me.  They told me they couldn't

21   do that.  We don't do that here, or we don't help y'all do that

22   kind of stuff.  And then, you know -- filling the paper out, I

23   need a staff member up in the front to verify my account, the

24   balance or whatever, and they're playing with the mail.

25             I have other mail.  Like, I can show you where I got my

1   mail -- the day that I got my mail was like the 4th of '23, and

2   the day that you guys sent me the mail was like March the 8th.

3   So that's like 20 or 30 days before I got my mail.

4            **THE COURT:**  Okay.

5            **PLAINTIFF THOMAS:**  And I only got it then because I

6   acted a fool.  I have request forms and stuff.

7            **THE COURT:**  Okay.  So who do you claim is responsible

8   for the withholding of the mail?

9            **PLAINTIFF THOMAS:**  I would say the only two that pass

10  out mail, Kimberly Wallace and Briana Perryman.

11           **THE COURT:**  Okay.

12           **PLAINTIFF THOMAS:**  Before I started acting up about

13  it, before I started writing about it and making it a big

14  issue, they had nobody over the mail but Kimberly Wallace and

15  Briana Perryman, the lieutenants that were over the shift.  Now

16  they have somebody else that's appointed over the mail.

17           **THE COURT:**  Are you claiming that Wallace and

18  Perryman did this in a malicious way, or did they do this

19  because you claim they were incompetent?

20           **PLAINTIFF THOMAS:**  No, they did this in a malicious

21  way so I wouldn't go through with my lawsuits and I wouldn't

22  file what I was doing, trying to hinder me.

23           **THE COURT:**  All right.  And why, in your knowledge,

24  from your perspective, Mr. Thomas, why do you claim it was

25  malicious?

1    **PLAINTIFF THOMAS:**  Because I know them.  We have a

2    history.  I've been to jail before, you know.  I know they know

3    that they are on my lawsuit.  They know I got a lawsuit on

4    them.  You aren't going to help me get you in trouble, you

5    know.

6    **THE COURT:**  Okay.  So you are saying based on you

7    knowing these people.  Did you ever confront them or ask them

8    about it?

9    **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir.

10   **THE COURT:**  Okay.  Do you recall what was said or

11   what you claim was said?

12   **PLAINTIFF THOMAS:**  They have, like, they gave -- it's

13   a wrong address, or we are doing something wrong back there,

14   how we are filling out the mail and stuff, or the mail is

15   backed up at the post office or whatever.

16   **THE COURT:**  Okay.  So they gave you some excuses that

17   you don't think were accurate?

18   **PLAINTIFF THOMAS:**  Yes, sir.

19   **THE COURT:**  Okay.

20   **PLAINTIFF THOMAS:**  Or how they did it, how she did

21   it, it's -- I got the paper to show what she said.  She said,

22   "With outgoing mail, when mail is outgoing from the jail and

23   Pike County stamp is placed on it" -- see, they put a stamp on

24   it -- "Please make sure that the stamp is placed right below

25   the return address and not anywhere the address is going to

1    because our stamp, Magnolia, Mississippi 39652, at the bottom,

2    the post office machines are reading that as going to Magnolia,

3    which is delaying the mail, causing a problem for the post

4    office."

5              THE COURT:  Okay.  Was the stamp something you would

6    place on there?

7              PLAINTIFF THOMAS:  No, sir.  It was something they

8    placed on it.  They placed the stamp on it.  They got the

9    stamp, the ink stamp or whatever, that they put on it, you

10   know, trying to mess the mail up.  They know how to do this

11   stuff.

12             THE COURT:  Did I hear you say that the mail

13   situation improved at a later date?

14             PLAINTIFF THOMAS:  Yes, sir, with a new officer.

15             THE COURT:  So when was it a problem?  Between what

16   dates?

17             PLAINTIFF THOMAS:  From '22 to about -- let's see a

18   good date.  Yeah, about 4/22, 24.

19             THE COURT:  So you said 4/22?

20             PLAINTIFF THOMAS:  Yes, sir.

21             THE COURT:  So April of 2022 until when in 2024?

22             PLAINTIFF THOMAS:  April '22, I guess.  I guess

23   April, the fourth month.

24             THE COURT:  Yes.  So roughly April of 2022 until

25   April of 2024?

1      **PLAINTIFF THOMAS:**  Yes, sir.

2      **THE COURT:**  How are you claiming that the issues

3  you've alleged with your mail harmed you?

4      **PLAINTIFF THOMAS:**  Because it was harmful intent.  It

5  might have hindered me from doing what I was doing.  I could

6  have had the process going a long time ago, had they done what

7  they were supposed to have done.

8      **THE COURT:**  Okay.  So it delayed you, basically?

9      **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir.

10     **THE COURT:**  You referenced a lawsuit that was

11  dismissed.  Are you referring to the one that was Civil Action

12  Number 5:22cv50-DCB-LGI, styled *Thomas versus Brumfield and*

13  *Bynam*?

14     **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir.  Yes, sir.

15  Yes, sir.

16     **THE COURT:**  It looks like in that lawsuit --

17     **PLAINTIFF THOMAS:**  No response?

18     **THE COURT:**  -- you are alleging some of the same

19  claims you are alleging here?

20     **PLAINTIFF THOMAS:**  Yes, sir.

21     **THE COURT:**  And that lawsuit was dismissed for not

22  following the Court's orders?

23     **PLAINTIFF THOMAS:**  Yes, sir, because they didn't give

24  me my mail so I could do it.

25     **THE COURT:**  Okay.  And you've realleged the same

1 claims --

2        **PLAINTIFF THOMAS:**  Yes, sir.

3        **THE COURT:**  You need to let me finish.  I want to

4 make sure I'm getting it on the record.  So you have realleged

5 the same claims here, correct?

6        **PLAINTIFF THOMAS:**  Yes, sir.  Yes, sir.

7        **THE COURT:**  Other than delay in how far along the

8 process is at this point, any other harm you are claiming?

9        **PLAINTIFF THOMAS:**  No, I couldn't -- no, sir.

10        **THE COURT:**  Okay.  You mention in your complaint the

11 acronym PREA.

12        **PLAINTIFF THOMAS:**  PREA.  PREA.

13        **THE COURT:**  What are you referencing with that?

14        **PLAINTIFF THOMAS:**  Prison Rape Elimination Act.

15        **THE COURT:**  Did you suffer a prison rape?

16        **PLAINTIFF THOMAS:**  No, sir.

17        **THE COURT:**  Okay.  So that's not an allegation that

18 has anything to do with what you suffered, correct?

19        **PLAINTIFF THOMAS:**  Yes, sir.

20        **THE COURT:**  Okay.

21        **PLAINTIFF THOMAS:**  I was just saying those are PREA

22 violations, no locking doors, no lights in the cells, nobody in

23 the tower.  Those are PREA violations, you know.  That's for

24 anybody.

25        **THE COURT:**  Are you claiming that Pike County had any

1    official policy as it relates to the mail issues you were

2    suffering?

3              **PLAINTIFF THOMAS:**  Policies is like -- can you

4    explain that?

5              **THE COURT:**  You said that Wallace and Perryman were

6    delaying delivery of your mail to you.  What I wanted to

7    understand is, are you claiming that Pike County had some

8    official policy that inmates were to be denied their mail?

9              **PLAINTIFF THOMAS:**  No, sir.  No, sir.  It's them by

10   themselves.  They know the nature of the mail.  I've had a lot

11   of mail that hasn't gone out.  I think I sent a bag -- I mean,

12   a letter full of bugs to the court, to up here, to show how

13   much insect infestation we had at the jail.

14             **THE COURT:**  I'm going to ask you please not to do

15   that again.

16             **PLAINTIFF THOMAS:**  It never reached here.

17             **THE COURT:**  Okay.

18             **PLAINTIFF THOMAS:**  Because they went in my mail and

19   took it out.

20             **THE COURT:**  We are certainly happy to receive your

21   legal filings, but we don't want to receive objects.

22             **PLAINTIFF THOMAS:**  I did -- I told you -- I had wrote

23   it before -- I had wrapped it up real good, and then I put on

24   it, I'm sorry for sending this, but I want to show you what was

25   going down there.  I know you guys came down there on May the

1    1st -- your respective staff came down on May 1st to see the

2    conditions of the jail.  So I know y'all know what is going on.

3         **THE COURT:**  All right.  Anything else you want to add

4    about your claims at this time?

5         **PLAINTIFF THOMAS:**  Not that I can recall.

6         **THE COURT:**  Okay.  Ms. Malone, any questions you

7    would like to ask Mr. Thomas or anything you would like him to

8    clarify at this time?  I will give you an opportunity to do so.

9    This is not, however, a deposition, so you will need to keep it

10   brief and succinct.

11        **MS. MALONE:**  Thank you, Your Honor.

12        Mr. Thomas, your testimony earlier, when asked about

13   complaints regarding the conditions, you testified, "We made

14   petitions," and you got everyone to sign.  Could you explain?

15   Was that a grievance or was that a handwritten petition with

16   prisoner signatures?  Would you clarify that?

17        **PLAINTIFF THOMAS:**  Yes, ma'am.  We all got together,

18   all of us that know a little something, we got together and

19   wrote all the stuff that we wanted fixed in the zone or

20   whatever.  Like, could y'all please fix it?  And we signed it

21   -- we thought if we got as many people as we can, it might do

22   something.

23        **MS. MALONE:**  And you testified you did submit some

24   grievances, so you were aware of the grievance procedure at the

25   Pike County jail?

1      **PLAINTIFF THOMAS:**  Yes, sir -- yes, ma'am.  Yes,

2   ma'am.  I'm an avid request form -- I use request forms and

3   everything, yeah.

4      **MS. MALONE:**  I tender the witness, Your Honor.

5      **THE COURT:**  Okay.  Before I give you a chance to ask

6   some questions, Mr. Cowan, let me ask you a clarification of

7   something I didn't ask, Mr. Thomas.  I want to know what you

8   want.  You filed a lawsuit, and I can put your claims in three

9   big buckets:  The conditions of confinement at a place where

10  you are no longer confined; the assault with Young; and then

11  the mail issues.  I want to understand what you want.  What do

12  you want to recover as your damages in this lawsuit?

13      So can you tell me what you are seeking in terms of a

14  recovery or damages?

15      **PLAINTIFF THOMAS:**  I'm going to say I want $600,000,

16  but that's for not sending me to my -- that's for putting

17  charges on me, which I'm in Pike County.  If I had got

18  convicted of that, that is wrongful conviction.  You gave me a

19  charge.  I could have been convicted.  You take my life, years

20  from my life playing with me.

21      My wrist, my wrist is -- I'm no longer able to use my

22  wrist.  This is my life.  I have to work with my hands.  I do

23  carpentry and construction.  I can't do that no more.  I'm not

24  on disability.

25      As far as my mail, you still hindered me from doing what I

1    had to do to get what I need.  This is for the rest of my life

2    now, you know.  I can't take care of myself like I used to, so

3    what am I going to do when I do get out there?

4          **THE COURT:**  Okay.  Thank you, sir.

5       Mr. Cowan, do you have any questions you would like to ask

6    in follow-up?

7          **MR. COWAN:**  Just a handful, Your Honor.

8       Mr. Thomas, I represent Mr. Young in this case you filed.

9    A quick question for you:  From your description of the events

10   with the altercation you had with Mr. Young, correct me if I am

11   wrong when I say that it sounds like what happened is Mr. Young

12   got in your space and poked you in the forehead; is that right?

13         **PLAINTIFF THOMAS:**  Yes, sir.

14         **MR. COWAN:**  Okay.  And your injured hand was in a

15   brace at the time, correct?

16         **PLAINTIFF THOMAS:**  Yes, sir.

17         **MR. COWAN:**  And it was free?

18         **PLAINTIFF THOMAS:**  Yes, sir.

19         **MR. COWAN:**  So it was not shackled to your body like

20   your other hand was?

21         **PLAINTIFF THOMAS:**  Yes, sir.

22         **MR. COWAN:**  And when Mr. Young poked you in the

23   forehead, I think you testified that you swung at him?

24         **PLAINTIFF THOMAS:**  No, I poked him in the forehead.

25   I poked him back.  It's on the video.  I poked him back.  And

1    then he ran at me.  And then he was hanging in the door.  His

2    body is outside the door.  He is still inside the door.  He

3    just went on about his business, just left, but he comes back

4    in the door and pokes me in my forehead, and I poked him back

5    in his forehead.  Because that is really all I can really do

6    with my hand because my finger -- this finger is broke.  It is

7    straight.  So I poked him in the forehead.  And then he opens

8    the door and he runs at me.  So when he runs at me, I side-step

9    him, and then I punch him with my broke wrist to keep him from

10   coming at me, because I know he is coming because he's got the

11   black gloves on.

12       **MR. COWAN:**  What specific injury are you saying you

13   suffered from that particular altercation?  Was it just your

14   eye?

15       **PLAINTIFF THOMAS:**  My eye and my wrist.  My wrist is

16   messed up.

17       **MR. COWAN:**  But prior to that, your wrist was in a

18   brace, right?

19       **PLAINTIFF THOMAS:**  Yes, sir.

20       **MR. COWAN:**  And you had actually had surgery on it

21   for a broken wrist?

22       **PLAINTIFF THOMAS:**  I had to reinjure it to -- I had

23   to rehurt it to get him off, to keep him from attacking me.

24       **MR. COWAN:**  Other than your eye and your wrist, is

25   there anything else you are contending was injured from that

1    altercation?

2         **PLAINTIFF THOMAS:**  My head.  You know, when he banged

3    my head on the corner of the bench, you know.

4         **MR. COWAN:**  Now, you were taken to a clinic after

5    that altercation to be --

6         **PLAINTIFF THOMAS:**  I'm sorry.

7         **MR. COWAN:**  My question is, you were taken to a

8    clinic after that altercation to be evaluated, right?

9         **PLAINTIFF THOMAS:**  The next day.

10        **MR. COWAN:**  All right.  Is there any other medical

11   provider you have seen for an injury related to that

12   altercation other than that visit to that clinic?

13        **PLAINTIFF THOMAS:**  No, sir.

14        **MR. COWAN:**  So in looking at your grievances at the

15   Pike County jail, I see a litany of grievances, and I'm going

16   to list some, and you tell me if you recall filing grievances

17   about these issues.  Okay?

18        **PLAINTIFF THOMAS:**  Okay.

19        **MR. COWAN:**  Do you recall filing grievances about

20   your mail?

21        **PLAINTIFF THOMAS:**  Yes, sir.

22        **MR. COWAN:**  Do you recall filing grievances about

23   your diet?

24        **PLAINTIFF THOMAS:**  Yes, sir.

25        **MR. COWAN:**  Do you recall filing grievances

1 requesting -- a grievance requesting paper to write your

2 daughter?

3          **PLAINTIFF THOMAS:**  Yes, sir.

4          **MR. COWAN:**  Do you recall filing a grievance asking

5 to see a doctor about your arm or your wrist?

6          **PLAINTIFF THOMAS:**  Yes, sir.

7          **MR. COWAN:**  Do you recall filing a grievance asking

8 to see a dentist about your tooth?

9          **PLAINTIFF THOMAS:**  No, sir because I don't have any

10 tooth problems.  I don't think.

11          **MR. COWAN:**  So it's safe to say you understood how to

12 submit grievances at the jail?

13          **PLAINTIFF THOMAS:**  Yes, sir.

14          **MR. COWAN:**  Is that the process you ordinarily

15 followed if you needed something addressed -- for leadership to

16 address a complaint of yours?

17          **PLAINTIFF THOMAS:**  Yes, sir.

18          **MR. COWAN:**  I don't have any other questions.

19          **THE COURT:**  Okay.  I appreciate you providing that

20 information about your claims, Mr. Thomas.  It's helpful for me

21 to have a better understanding.  Certainly we can read what you

22 have put in your complaint, but it is helpful to have you to

23 get a chance to speak and articulate what those are in the

24 courtroom.

25          What we are going to do next is discuss some of the things

1  that I require both sides to bring to today's hearing.  I asked

2  you to bring some documents today, also an exhibit list and a

3  witness list.  Ms. Malone, have you brought any documents to

4  produce to Mr. Thomas?

5          **MS. MALONE:**  Yes, Your Honor.  I have Mr. Thomas'

6  jail file from the Pike County jail, which includes medical

7  records.

8          **THE COURT:**  Are those documents Bates-numbered?

9          **MS. MALONE:**  Yes, Your Honor.

10         **THE COURT:**  Would you please dictate the Bates

11  numbers into the record?

12         **MS. MALONE:**  They are labeled DEF1 through DEF143.

13         **THE COURT:**  Okay.  And if you will, you said those

14  include his jail file; is that correct?

15         **MS. MALONE:**  Yes, Your Honor.

16         **THE COURT:**  And his medical records?

17         **MS. MALONE:**  Yes, Your Honor.

18         **THE COURT:**  All right.  Anything else included in

19  that document production?

20         **MS. MALONE:**  No, Your Honor.

21         **THE COURT:**  All right.  Have you brought your exhibit

22  and witness lists?

23         **MS. MALONE:**  I have, Your Honor.

24         **THE COURT:**  Do you have a copy that you can provide

25  to the Court and an extra copy that you can provide to Mr.

1   Thomas?

2          **MS. MALONE:**  Yes, Your Honor.

3          **THE COURT:**  If you will please present a copy to

4   Ms. Obert at this time.  We will file a copy of that in the

5   record, and I will ask that you give your document production

6   and Mr. Thomas' copy to Mr. Thomas, please.

7          Thank you, Ms. Malone.

8          Mr. Cowan, do you have any documents to produce to Mr.

9   Thomas?

10          **MR. COWAN:**  Yes, Your Honor.  I believe they are

11   likely largely duplicative of what Ms. Malone has produced, but

12   I have a set of his jail file that is Bates-stamped DEFHY1

13   through 143.

14          **THE COURT:**  All right.  So that just includes his

15   jail file?

16          **MR. COWAN:**  Yes, that is correct.

17          **THE COURT:**  You believe it is likely duplicative or

18   in some parts duplicative of what Ms. Malone has produced?

19          **MR. COWAN:**  I think it's maybe exactly the same

20   thing, but I have not cross-checked.

21          **THE COURT:**  Have you brought your witness and exhibit

22   lists?

23          **MR. COWAN:**  Your Honor, I left those on my desk at

24   the office, but I can tell you what their contents are, and I

25   can have them filed in the court record as soon as I return and

1    have him mailed a copy.  The witness list is Mr. Herbert Young

2    and Officer Appalonia Williams are the two witnesses.  And our

3    exhibit list is simply 1 through 143 of Herbert Young's

4    document production.

5              **THE COURT:**  I'm not sure that you are able to file

6    the witness and exhibit lists.  I think that's why we have you

7    bring them here.  There's not a way for you to file those.  If

8    you will e-mail those to my chambers inbox.  My law clerk,

9    Ms. Obert, will file those.  Once they are filed, Mr. Thomas,

10   you will receive a copy.  But Mr. Cowan has also articulated

11   who the two witnesses are, and also that the documents on his

12   exhibit list are the documents he has just given to you right

13   now.

14             **MR. COWAN:**  That is correct.  And I will do that.

15             **PLAINTIFF THOMAS:**  Yes, sir.

16             **THE COURT:**  I will ask that you do that before the

17   end of the week, Mr. Cowan.

18        Mr. Thomas, have you brought any documents to produce to

19   the defendants in this case?

20             **PLAINTIFF THOMAS:**  Yes, sir.  I just have to get

21   copies or whatever.

22             **THE COURT:**  How much information have you brought?

23   Let's start with that.

24             **PLAINTIFF THOMAS:**  A couple of request forms and,

25   like, the picture with the mail, and the request forms talking

1    about the mail and stuff like that.

2            **THE COURT:**  Hold it up so I can see.  Is it just a

3    few pages?

4            **PLAINTIFF THOMAS:**  Yes, sir, it's not that much.

5            **THE COURT:**  How many copies of it do you have?

6            **PLAINTIFF THOMAS:**  I just bring, like, copies to give

7    them?

8            **THE COURT:**  Do you just have one copy of them?

9            **PLAINTIFF THOMAS:**  Yes, sir.  Can you make copies?

10           **THE COURT:**  Yes, we will make you a copy.  Ben, would

11   you mind grabbing that from Mr. Thomas, and go ahead and run

12   three copies.

13       All right.  You said this is some pictures of the mail and

14   some of your grievance forms?

15           **PLAINTIFF THOMAS:**  Yes, sir.  I have more, but I

16   couldn't find them all.  Every time there is a shakedown, it

17   gets tumbled around and stuff.

18           **THE COURT:**  Have you brought your exhibit list and

19   your witness list?

20           **PLAINTIFF THOMAS:**  Yes, sir.

21           **THE COURT:**  Do you have a copy of those to produce to

22   the defendants?

23           **PLAINTIFF THOMAS:**  I just have these, the form that

24   you sent me.

25           **THE COURT:**  Okay.  Ms. Obert, why don't you go ahead

1    and get those.  We will file those in the record as well so

2    defense counsel will get a copy of what you brought and there

3    will be a copy in the record as well.

4         Ms. Malone, is there a video of the altercation with

5    Officer Young?

6              **MS. MALONE:**  Your Honor, I don't have a copy here

7    today to produce.  I'm going to have to do some investigating

8    because if it was bound over to the grand jury, then it was

9    given to the District Attorney's office.  Of course, the

10   District Attorney's office involves state actors.  They may or

11   may not take the position that if it's pending grand jury that

12   it's not something I can produce.  But I will certainly

13   attempt, if the Court desires me to do so.

14             **THE COURT:**  Okay.  I mean, it's a video from the

15   jail, if it exists.

16             **MS. MALONE:**  Yes, Your Honor.  If it exists.  If they

17   retained a copy rather than having given the only copy to the

18   District Attorney.

19             **THE COURT:**  I'm going to order you to file a status

20   report within 30 days explaining whether the video exists, and

21   if it exists, whether it can be produced.  And you can explain

22   at that point whether or not there's an issue with -- if

23   there's a single copy, if it's in the grand jury file currently

24   and what the status of that is.  Any questions about that?

25             **MS. MALONE:**  No, Your Honor.  Thank you.

1       **PLAINTIFF THOMAS:**  Excuse me, Your Honor.  Why

2   wouldn't they have a copy, though?

3       **THE COURT:**  You know, Mr. Thomas, I don't know, but

4   that's why I've asked Ms. Malone to investigate and file a

5   status report.

6       **PLAINTIFF THOMAS:**  Yeah, that's why I filed a motion

7   for appointment of counsel because I know there's a time limit

8   on certain things.  Isn't there a time limit on the statute of

9   being bound over to the grand jury?  Because it was in 2022,

10  and now it is '25.

11      **THE COURT:**  Mr. Thomas, I can't give you legal

12  advice, but I can tell you that this is a claim relating to

13  conditions and events that occurred to you while you were

14  incarcerated in Pike County.

15      **PLAINTIFF THOMAS:**  Yes, sir.

16      **THE COURT:**  If you have issues relating to a criminal

17  prosecution, that's getting into the area of habeas and issues

18  that aren't in this lawsuit.

19      **PLAINTIFF THOMAS:**  Yes, sir, but I'm pretty sure that

20  it is a time limit they are supposed to have to do that.  So it

21  shouldn't be bound over to the grand jury.  They shouldn't be

22  holding it, and we should be able to get a copy.

23      **THE COURT:**  Ms. Malone is going to file her status

24  report.  As to your other comments, I'm going to withhold

25  comment on those.

1      **PLAINTIFF THOMAS:**  I'm sorry.

2          **THE COURT:**  What we are going to do now, Mr. Thomas,

3      I'm going to review your statements you have given today, and

4      I'm going to review again what you've filed in the record up to

5      this point.  The Court will issue a ruling on the pending

6      motion to amend concerning Ms. Wells, in light of the

7      representations that have been made on the record today.

8          What I will decide as part of my screening duty is whether

9      to move this case to the next stage.  You will be informed of

10     that by a written order from me.  If I do move the case to the

11     next stage, what I will do at that point is enter a discovery

12     and scheduling order that will set some deadlines and move the

13     case forward.  Okay?

14         **PLAINTIFF THOMAS:**  Okay.

15         **THE COURT:**  As a reminder, you do have an obligation

16     to keep the Court informed of your address.

17         Thank you, Ben.  Appreciate it.

18         As a reminder, Mr. Thomas, you do have an obligation to

19     let us know if your address changes.  So if you are moved to a

20     different facility, you need to promptly notify the court by

21     filing a notice of a change of address.

22         **PLAINTIFF THOMAS:**  Yes, sir.

23         **THE COURT:**  This is important because if we cannot

24     get in touch with you, the case may be dismissed for not

25     complying with the Court's orders.

1          **PLAINTIFF THOMAS:**  I understand that, sir.

2          **THE COURT:**  Any further questions today, Mr. Thomas,

3    before we conclude?

4          **PLAINTIFF THOMAS:**  No, sir.

5          **THE COURT:**  All right.  Ms. Malone, anything further?

6          **MS. MALONE:**  Nothing further, Your Honor.

7          **THE COURT:**  Mr. Cowan, anything further?

8          **MR. COWAN:**  Your Honor, one thing I wanted to

9    mention.  You are going to set the discovery and presumably a

10   motions deadline.  I think the defendants intend to file an

11   early dispositive motion on their exhaustion defenses.  And so

12   I'm just throwing that out there for the Court's consideration,

13   as a two-tiered motions procedure where the first exhaustion

14   motions deadline is the definitive motions deadline set, and it

15   can even be within two or three weeks of today's date.  That

16   way the Court's resources and the parties' resources aren't

17   wasted on a more significant time-intensive motions deadline.

18         **THE COURT:**  If you would like an exhaustion motion

19   deadline, I will give you one of November 12th.  So if the

20   defendants wish to file any motion addressing exhaustion

21   issues, you must do so by November 12th.

22         Mr. Thomas, I don't know whether they are going to file a

23   motion, but if they file a motion, you will need to respond.

24   Is South Mississippi on the E-filing as well, Alaine?

25         **LAW CLERK:**  Yes.

1          **THE COURT:**  So you are aware of how to get things to

2    the Court through the E-filing system y'all have there at the

3    court.  So if they file a motion, they will send you a copy,

4    and upon receipt, you will need to promptly respond to whatever

5    motion they file with whatever your position may be.  Okay?

6          **PLAINTIFF THOMAS:**  Yes, sir.

7          **THE COURT:**  All right.  That's going to conclude your

8    matter today, Mr. Thomas.  The Court will notify you of its

9    decision concerning screening and whether this case will move

10   on to the next stages via the written order, as I mentioned.

11   Otherwise, Court will stand in recess today.  Thank you for

12   being here today, and thank you, everyone, for your time.

13                          (HEARING CONCLUDED)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF COURT REPORTER


    I, Teri B. Norton, RMR, FCRR, RDR, Official Court
Reporter for the United States District Court for the Southern
District of Mississippi, appointed pursuant to the provisions
of Title 28, United States Code, Section 753, do hereby certify
that the foregoing is a correct transcript of the proceedings
reported by me using the stenotype reporting method in
conjunction with computer-aided transcription, and that same is
a true and correct transcript to the best of my ability and
understanding.

    I further certify that the transcript fees and format
comply with those prescribed by the Court and the Judicial
Conference of the United States.




s/ Teri B. Norton
TERI B. NORTON, RMR, FCRR, RDR
OFFICIAL COURT REPORTER